UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| KYLE D. NEELY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 3:23-cv-00170-RLY-CSW |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Kyle Neely has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 1.] He challenges a prison disciplinary proceeding in which he was found guilty of Offense B-231, Intoxicating Substance, and sanctioned with a 30-day loss of good-time credits and the imposition of a one-step demotion in credit earning class, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 9-6.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Neely's due process rights and his habeas petition is **DENIED**.

### I.
### LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the

disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On June 15, 2023, Sgt. D. Brown wrote a Conduct Report in which he stated:

> On 6-15-2023 at approx. 1:30 am I Sgt. D. Brown was conducting a shakedown of offender Neely, Kyle 132576 bunk. During the shakedown under Offender Neely[']s mat was a vitamin bottle full of clear alcohol, also recovered from under Neely[']s mat was a piece of tissue wrapped in a copper wire. The tissue that was recovered is common with how the offenders smoke to become intoxicated. The alcohol can be drunk to become intoxicated, due to recovering the bottle of alcohol and the wire wrapped piece of tissue, I am charging Offender Neely with a 231-B Intoxicating Substance which states in the adult Disciplinary code as follows: Making, receiving, giving, transferring, trading, or in any other manner moving from one person to another, or possessing an intoxicating substance, or being under the influence of any intoxicating substance (e.g., alcohol, inhalants, or chemical-soaked paper).

[Filing No. 9-1 at 1.]

Mr. Neely was notified of the charge on June 22, 2023, when he received a copy of the Conduct Report and the Screening Report. [Filing No. 9-1; Filing No. 9-4.] Mr. Neely pled not guilty to the offense and did not request to call any witnesses. [Filing No. 9-4 at 1.] However, he did request "physical evidence, if any," stating "[b]ring the bottle of alcohol that was taken to the hearing and also a bottle of Viroclean hand sanitizer. Compare the two and it will be shown they are the same." [Filing No. 9-4 at 1.]

A hearing was held on June 29, 2023. [Filing No. 9-6.] Mr. Neely appeared at the hearing, pled not guilty, and provided the following statement: "The wire and tissue are not together. The liquid was just Viroclean hand sanitizer." [Filing No. 9-6 at 1.]

2

The disciplinary hearing officer ("DHO") considered staff reports, physical evidence including "[p]hotos of [e]vidence," the Conduct Report, and Mr. Neely's statement. [Filing No. 9-6 at 1.] The DHO concluded that Mr. Neely was guilty of Offense 231, Intoxicating Substance, writing:

> DHO finds offender guilty based on conduct report, and photo evidence supporting charge given. Viroclean hand sanitizer has alcohol in it and has been drunk before in an attempt to become intoxicated. Offender is in possession of an intoxicating substance.

[Filing No. 9-6 at 1.] Mr. Neely was sanctioned with a 30-day loss of good-time credits and the imposition of a one-step demotion in credit earning class, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 9-6.]

Mr. Neely appealed to the Facility Head and the Indiana Department of Correction ("IDOC") Final Reviewing Authority, and both appeals were denied. [Filing No. 9-7; Filing No. 9-8; Filing No. 9-9; Filing No. 9-10.] He then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 1.]

### III.
#### ANALYSIS

Mr. Neely raises three grounds in his Petition: (1) that hand sanitizer is not an intoxicating substance; (2) that correctional officers bring their own hand sanitizer into the facility and are not arrested for possession or trafficking of an intoxicating substance; and (3) that the only reason he was convicted is because hand sanitizer has alcohol in it and he is an incarcerated individual. [Filing No. 1 at 2-3.] These grounds all relate to the sufficiency of the evidence used to convict him and the Court discusses them together.

3

Mr. Neely argues in support of his Petition as follows:

> I was found guilty of a B-231 intoxicating substance for possessing Viroclean hand sanitizer that was provided to the I.D.O.C. for incarcerated individuals and correctional officers to use for hand sanitizing purposes during and for the COVID-19 pandemic.  Just cause it contains alc[o]hol does not make it a[n] intoxicating substance.  It[']s very toxic and can kill you if drunk it.  I had it in a bottle for my hands at my bunk and for toilets, dishes and [utensils].  I[ ] was not intoxicated by it, or trying to drink it.  It was composed and verified to be Viroclean hand sanitizer.  I value my life and would not try such.  Nor[ ] have I heard of such.
>
> [Correctional officers] poss[ess] hand sanitizer and bring it in and out of this Facility and don't get arrested or fined for poss[ession] or trafficking in a controlled or intoxicating substance.  Their possessing it and me possessing it is the same.  We are still both human beings.  If anything I should have been wrote up on a B-215 poss[ession] of unauthorized property.
>
> Even though Viro Clean hand sanitizer has alcohol in it, it[']s still just hand sanitizer and only hand sanitizer.  I cannot be found guilty of poss[ession] of intoxicating substance for something provided to the facility for I.I. and officers to use.  The wire and tissue was not soaked or even talked about at [the hearing].  Only the hand sanitizer and the [alcohol] it contained.  If it wasn't for that I wouldn't of be[en] found guilty.  Decision to find me guilty was [solely] made on Viroclean hand sanitizer containing alcohol.

[Filing No. 1 at 2-3.]

In response, the Respondent argues that Mr. Neely admits that the substance in the bottle contained alcohol and that even though it was in Viroclean hand sanitizer, the DHO explained that Viroclean has "been drunk before in an attempt to become intoxicated."  [Filing No. 9 at 7.]  The Respondent notes that Mr. Neely does not contest the DHO's explanation that hand sanitizer contains alcohol and can be consumed to achieve intoxication.  [Filing No. 9 at 7.]  He also asserts that Mr. Neely argues that he should have been charged with possession of unauthorized property, so "admits that he knew he was not allowed to possess hand sanitizer in his cell."  [Filing No. 9 at 7-8.]  The Respondent asserts that "[p]risoners do not share the same rights as guards who work in the facility," and that prison administrators can adopt and execute policies and practices which are

4

necessary. [Filing No. 9 at 8.] He contends that the evidence shows that Mr. Neely had the hand sanitizer under his mat, that hand sanitizer contains alcohol, and that "there was also evidence of paraphernalia found with the liquid which independently supports the guilty finding." [Filing No. 9 at 8.]

Mr. Neely did not file a reply.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Under this standard, "courts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quoting *Hill*, 472 U.S. at 454); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Ping v. McBride*, 888 F. Supp. 917, 922 (7th Cir. 1993) (stating that in a prison disciplinary case, it is not the proper function of the court "to reweigh conflicting evidence and to make credibility determinations") (citing *Viens v. Daniels*, 871 F.2d 1328 (7th Cir. 1989)).

Here, the Conduct Report and photographs of the bottle containing hand sanitizer constitute sufficient evidence to conclude that Mr. Neely possessed an intoxicating substance. *McPherson, 188 F.3d at 786* (Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision."). Mr. Neely was charged with and convicted of committing Offense 231, which prohibits "'making, receiving, giving, transferring, trading, or in any other manner moving from one person to another, or possessing an intoxicating substance, or being under the influence of any intoxicating substance (e.g., alcohol, inhalants, or chemical-soaked paper)." [Filing No. 9-11 at 6.] An "intoxicating substance" is defined as:

> Anything which, if taken into the body, may alter or impair normal mental or physical functions so that there is an impaired condition of thought and action and the loss of normal control of an individual's faculties…. This includes any paper or other substance soaked, contaminated, infused, laced, or in any other manner incorporated with a chemical, known or unknown, for the purpose of taking the chemical into the body in any manner to alter or impair normal mental or physical function.

[Filing No. 9-12 at 5.]

Sergeant Brown stated in the Conduct Report that he found a "vitamin bottle half full of clear alcohol" and that "[t]he alcohol can be drunk to become intoxicated." [Filing No. 9-1 at 1.] The DHO considered pictures of the vitamin bottle, [Filing No. 9-2; Filing No. 9-3], and found that even though the bottle contained Viroclean hand sanitizer, "Viroclean hand sanitizer has alcohol in it and has been drunk before in an attempt to become intoxicated." [Filing No. 9-6 at 1.] The information from the Conduct Report and the photos of the vitamin bottle constitute "some evidence" that Mr. Neely possessed an intoxicating substance.

Mr. Neely's arguments are unavailing. First, he argues that hand sanitizer is not an intoxicating substance. [Filing No. 1 at 1.] But he also admits that hand sanitizer contains alcohol.

6

[Filing No. 1 at 2 (Mr. Neely arguing that "[j]ust cause [the Viroclean hand sanitizer] contains alc[o]hol does not make it a[n] intoxicating substance").] As discussed above, "intoxicating substance" includes "[any] substance…incorporated with a chemical, known or unknown, for the purpose of taking the chemical into the body in any manner to alter or impair normal mental or physical function." [Filing No. 9-12 at 5.] Alcohol fits within this definition.

Second, Mr. Neely argues that correctional officers bring hand sanitizer into the facility and are not arrested for possession or trafficking intoxicating substances. [Filing No. 1 at 2.] But correctional officers are not subject to the disciplinary rules that apply to incarcerated individuals such as Mr. Neely. And to the extent that Mr. Neely is challenging those rules or the facility's policies, the Court notes that prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

Finally, Mr. Neely argues that the only reason he was convicted is because hand sanitizer has alcohol in it and he is an incarcerated individual. It is true that he was convicted because hand sanitizer has alcohol in it – alcohol falls within the definition of "intoxicating substance" and Mr. Neely does not dispute that he possessed the hand sanitizer and that the hand sanitizer contained

alcohol. And incarcerated individuals are prohibited from possessing intoxicating substances such as alcohol. Mr. Neely's argument simply states the reason he was convicted – he possessed alcohol and he is an incarcerated individual who is prohibited from doing so.

In short, some evidence supported the DHO's finding of guilt and Mr. Neely's arguments to the contrary do not provide a basis for relief.

## IV.
## CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Neely to the relief he seeks. Accordingly, Mr. Neely's Petition for a Writ of Habeas Corpus, [1], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.[1]

Date: 11/21/2024

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

---

[1] The IDOC website indicates that since the filing of his Petition, Mr. Neely has been transferred to New Castle Correctional Facility. The Clerk is **DIRECTED** to update Mr. Neely's address on the docket consistent with the address in the distribution list below.

**<u>Distribution via ECF only to all counsel of record</u>**

**<u>Distribution via U.S. Mail to</u>:**

Kyle D. Neely
#132576
New Castle Correctional Facility
1000 Van Nuys Road, P.O. Box E
New Castle, IN 47362